## Falco v. Insurance Company
## of North America

*Bernard V. O'Hare, Jr.*, for Horvath and Flick, claimants.

*William H. Platt*, for Allentown Bar & Restaurant Supply, Inc., claimant.

*Edward M. Malos*, for William K. Shannon, Jr., claimant.

*Norman Seidel*, for Easton National Bank & Trust Co., claimant.

GRIFO, *J.*, July 9, 1975—This action began as a suit in assumpsit by plaintiffs, Rocco and Gloria Falco (hereinafter "Falcos"), against defendant, Insurance Company of North America (hereinafter "INA"), to recover the proceeds of a fire insurance policy on the Falcos' business, the Whitehouse Bar and Grille, which was totally destroyed by fire on November 26, 1972.

On July 20, 1973, Allentown Bar and Restaurant Supply, Inc. (hereinafter "Allentown Bar"), the mortgagee of certain personal property destroyed in the fire, filed a petition to intervene in the matter as a party-plaintiff. Allentown Bar was subsequently permitted to intervene by an order of court dated April 1, 1974.

On February 6, 1974, after a stipulation of facts by counsel for the Falcos and INA, this court rendered a verdict in favor of the Falcos in the amount of $70,566.02. In announcing the verdict, we entered the following order:

"AND NOW, this 6th day of February, 1974, in open court, after stipulation of facts by counsel for Plaintiffs and Defendant, the case coming before the court in a trial without jury, verdict is hereby entered in favor of the Plaintiffs, Rocco Falco and Gloria Falco, his wife, against Insurance Company of North America, Defendant, in the amount of $70,566.02.

"Said amount of the verdict is to be paid as follows:

"(a) $23,522.00 to Gus Milides, Norman Seidel and Daniel E. Cohen, Attorneys' fees, in satisfac-

tion of the lien on said fund for counsel fees and expenses in creation of the fund, and

"(b) $47,044.02 to Ernest DiSalvatore, Clerk of the Court of Common Pleas of Northampton County, Civil Division, to be held by him pending disposition of the claim of Allentown Bar and Restaurant Supply, Inc., as proposed intervenor, as well as the claims of other attaching creditors, judgment creditors, and other claims against the fund. The said Clerk of the Court of Common Pleas of Northampton County, Civil Division, is directed to place the said sum in an interest bearing account at Lafayette Trust Bank with no distribution thereof to be made until further order of this court."

In accordance with the above order, INA paid to Ernest DiSalvatore, Clerk of the Court of Common Pleas of Northampton County, Civil Division, on February 21, 1974, the amount of $47,044.02.

Following the payment of this money to the clerk, the various creditors of the Falcos began to take action against the fund. On March 6, 1974, William K. Shannon, Jr. (hereinafter "Shannon"), a judgment creditor of the Falcos in May term, 1971, no. 10, served a rule to show cause why the sum of $12,324.96, plus interest, should not be paid to Shannon, on the clerk, Ernest DiSalvatore. This rule was indexed to May term, 1971, no. 10, and served only on the clerk.

No answer was filed, and on April 26, 1974, the rule was made absolute. Included in the court order of that date were the provisions that the sum of $13,051.06 be paid to Shannon out of the $47,044.02 held in April term, 1973, no. 98, and that May term, 1971, no. 10, be consolidated with April term, 1973, no. 98.

Around March 20, 1974, the Easton National

Bank and Trust Company (hereinafter "ENBT"), another judgment creditor of the Falcos, filed a petition seeking partial distribution of the funds on deposit with the clerk on the basis that the Falcos assigned the amount of $6,649.50 out of the insurance proceeds to ENBT. This petition was indexed to April term, 1973, no. 98, and served on all parties to the action. An answer was subsequently filed by Allentown Bar denying ENBT's right to any of the money and alleging Allentown Bar's priority to the funds as a plaintiff-intervenor and equitable lienor.

On April 5, 1974, Allentown Bar filed a complaint in assumpsit against the Falcos and INA. A default judgment, for failure to file an answer to the complaint was entered against the Falcos by Allentown Bar on May 2, 1974, in the amount of $20,467.28. INA filed an answer to the complaint, and on July 24, 1974, Allentown Bar filed a motion for judgment on the pleadings against INA.

On July 10, 1974, Wilbert T. Horvath and William S. Flick (hereinafter "Horvath and Flick"), mortgagees of real estate damaged in the Falco fire, filed a petition for partial distribution based on a mortgage deficiency judgment against the Falcos in the amount of $49,009.91. Allentown Bar filed an answer to this petition, and on July 24, 1974, filed its own petition for partial distribution in the amount of $20,467.28. During a hearing on these petitions on August 7, 1974, Horvath and Flick and Allentown Bar learned for the first time of the April 26, 1974, distribution to Shannon. On August 21, 1974, and on September 25, 1974, Allentown Bar and Horvath and Flick respectively petitioned this court to revoke the April 26, 1974, order and direct the clerk of courts, or Shannon, to return the $13,051.06. Finally, on October 22, 1974, Shannon

petitioned the court to correct the February 6, 1974, verdict and to eliminate and strike subparagraphs (a) and (b).

From this rather complicated chronology of facts, there can be gleaned two basic legal issues. The first is whether this court's order dated April 26, 1974, should be vacated and the $13,051.06 directed returned to the clerk of courts by Shannon. And, second, whether the mortgagees of the real estate, Horvath and Flick, and the mortgagee of the personal property, Allentown Bar, or the judgment creditors, including Shannon and ENBT, are entitled to the insurance proceeds of the policy taken out by the mortgagors, the Falcos.

Considering the first question, we now recognize that the rule to distribute the $13,051.06 to Shannon, which was made absolute, should have been served on all the parties to this action. We are, therefore, bound to vacate our order dated April 26, 1974, declaring the rule absolute for failure to reply. Said order being vacated, we direct that Shannon return the $13,051.06, plus interest from April 26, 1974, to the clerk of courts. Shannon was merely a general creditor of the Falcos with a judgment indexed to May term, 1971, no. 10. This matter was totally unrelated to the Falco v. INA, April term, 1973, no. 98, dispute. Furthermore, Shannon's rule to show cause, which was directed at collecting funds deposited with the clerk from the Falco v. INA, April term, 1973, no. 98, was served only on the clerk of courts, Ernest DiSalvatore. When no answer was filed by the clerk, an order making the rule absolute was signed on April 26, 1974. Contained in this final order, along with the provision to pay Shannon the $13,051.06, was the additional provision that the Falco v. INA, April

term, 1973, no. 98, action be consolidated with the Shannon v. Falco, May term, 1971, no. 10, action.

The problem with this entire chain of events was that Shannon did not, at any time, give any sort of notice to any of the other parties engaged in this dispute. See Pa.R.C.P. 233(c). Furthermore, Shannon's attempt at consolidation of the actions does not square with Pa.R.C.P. 213, since, after the verdict and accompanying order of court was handed down, the only issue left to decide was the conflicting claims to the fund.

Finally, we are unconvinced by Shannon's arguments. This court's order of February 6, 1974, clearly put Shannon on notice that there were other interested parties to the fund who probably had priority over the general creditors of the Falcos. Under these circumstances, the February 6, 1974, order should not be corrected, and Shannon must return the funds he obtained in the amount of $13,051.06, plus interest from April 26, 1974, to the Clerk of Courts, Ernest DiSalvatore.

With the fund restored to the original amount, the remaining problem is whether the mortgagees of the real estate, Horvath and Flick, and the mortgagees of the personal property, Allentown Bar, or the judgment creditors, including Shannon and ENBT, are entitled to the insurance proceeds of the policy taken out by the mortgagors, the Falcos.

The law on this issue is clear that the mortgagees take priority over the general creditors based on the theory that an equitable lien was created against the insurance proceeds when the verdict was entered. This general rule is that:

"Where a mortgage or sales contract contains a covenant or condition that the property shall be

kept insured by the mortgagor or conditional purchaser for the benefit, protection, or better security of the mortgagee or conditional seller, and the former breaches the agreement by taking out insurance in his own name without assigning it or making it payable to the mortgagee or conditional seller, the agreement to insure, upon a loss, creates an equitable lien on the insurance proceeds in favor of the mortgagee or conditional vendee to the extent of the former's interests in the destroyed or damaged property.": 92 ALR 559 (1934).

See also First National Bank of Jessup v. Cappelli, 149 Pa. Superior Ct. 14, 26 A. 2d 119 (1942); Ruppin v. Perkiomen Valley Mutual Life Insurance Co., 6 D. & C. 271 (Lancaster, 1924); 55 Am. Jur. 2d, Mortgages, §§276-277.

In this case, all the elements of an equitable lien are present for both the mortgagees of the real estate, Horvath and Flick, and the mortgagees of the personalty, Allentown Bar. First, Horvath and Flick were the mortgagees of the real estate which contained a covenant by the Falcos to insure for the benefit and protection of Horvath and Flick. Likewise, Allentown Bar was a mortgagee of the personal property covered by a retail installment agreement which contained a covenant by the Falcos to insure for the benefit and protection of Allentown Bar's interest. Fire insurance was ultimately obtained by the Falcos, in their own names, in the amounts of $50,000 for the real estate and $25,000 for personal property.

Therefore, it is clear that Horvath and Flick have priority to that portion of the $50,000 real estate insurance fund remaining after a deduction for the following amounts: (1) $5,433.98 paid to the

Nazareth National Bank and Trust Company as the named real estate mortgagee on the fire insurance policy; (2) $15,681.40 paid to Gus Milides, Norman Seidel and Daniel E. Cohen, attorneys' fees.

Allentown Bar has priority to that portion of the fund equal to its claim, less $6,418.31 paid to Gus Milides, Norman Seidel and Daniel E. Cohen, attorneys' fees.

Finally, Shannon, as the first attaching general creditor, is entitled to the remainder.

Wherefore, we enter the following

## ORDER

And now, July 9, 1975, after consideration of the petitions of Shannon, Horvath and Flick, Allentown Bar, and ENBT, the court orders:

1. That Shannon pay back to Ernest DiSalvatore, the Clerk of the Court of Common Pleas of Northampton County, Civil Division, the amount of $13,056.06, plus interest from April 26, 1974.

2. That the fund held by Ernest DiSalvatore, Clerk of the Court of Common Pleas of Northampton County, Civil Division, is directed to be distributed as follows:

(a) $28,884.58, plus interest from February 6, 1974, to petitioners, Wilbert T. Horvath and William S. Flick;

(b) $14,048.97, plus interest from February 6, 1974, to petitioner-intervenor, Allentown Bar and Restaurant Supply;

(c) $4,110.47, plus interest from February 6, 1974, to William K. Shannon, Jr.